Timothy J. Preso
Abigail M. Dillen
Earthjustice
209 South Willson Ave.
Bozeman, MT  59715
(406) 586-9699
Facsimile: (406) 586-9695

Thomas F. Darin (Wyoming Bar No. 6-3405)
Jackson Hole Conservation Alliance
P.O. Box 2728
Jackson, WY  83001
(307) 733-9417
Facsimile:  (307) 733-9008

*Attorneys for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GREATER YELLOWSTONE COALITION, et al.,   ) | Case No.:  06-CV-37-J |
|   ) | |
|      Petitioners,   ) | |
|   ) | PETITIONERS' OPPOSITION TO |
|    vs.   ) | FEDERAL RESPONDENTS' |
|   ) | MOTION TO STRIKE |
| DALE BOSWORTH, in his official   ) | |
| capacity as Chief, United States Forest   ) | |
| Service, et al.,   ) | |
|   ) | |
|      Respondents,   ) | |
|   ) | |

|                          |   |
| ------------------------ | - |
| and                      | ) |
|                          | ) |
| STATE OF WYOMING, et al. | ) |
|                          | ) |
| Intervenor-              | ) |
| Respondents.             | ) |

Federal respondents invoke the administrative record rule in an effort to suppress the recent detection of chronic wasting disease ("CWD") in close proximity to elk feedgrounds. Further, federal respondents ask this Court to ignore mounting concern among scientists that the elk test-and-slaughter program may exacerbate the very problem it is intended to address — that is, the spread of brucellosis among feedground elk. However, this Court is not required to decide this case based on the false premise that CWD is not an imminent threat to western Wyoming's elk herds. Nor is this Court obliged to ignore the ongoing scientific controversy over the efficacy of the challenged elk test-and-slaughter program. On the contrary, this Court can and should take judicial notice of real-world concerns that necessarily bear on the propriety of granting the equitable relief requested by Petitioners Greater Yellowstone Coalition, et al. ("GYC").

2

## I.    GYC HAS PROPERLY PRESENTED EVIDENCE THAT WEIGHS IN FAVOR OF INJUNCTIVE RELIEF

GYC properly provided this Court with evidence that underscores the need for an injunction requiring the U.S. Forest Service and the Bureau of Land Management ("BLM"): (1) to undertake environmental analysis of disease threats arising from elk feeding; and (2) to stop the capture, testing, and slaughter of pregnant female elk pending compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq.  While the government suggests that GYC has "not offered any explanation as to why this Court needs their post-decision, extra-record documents to review the challenged action," Federal Respondents' Motion To Strike Extra-Record Materials ("Strike Mot.") at 1, both of GYC's proffered documents relate directly to the equities of granting injunctive relief.

First, the Jackson Hole News & Guide article entitled "Fatal elk disease gets closer to feeding areas" reports the Wyoming Game and Fish Department's ("WGFD") October 8, 2006 announcement that CWD was detected in an elk near the Shirley Mountains, located 120 miles from the Muddy Creek feedground.  See Exhibit 2 to Reply Brief of Greater Yellowstone Coalition, et al ("GYC Reply").

3

This news demonstrates both imminent harm to GYC's interest in conserving western Wyoming's elk herds and the pressing public interest in the completion of environmental analysis, including analysis of alternatives to elk feeding, in time to prevent or at least mitigate an impending CWD epidemic among feedground elk. See Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 542 (1987) ("In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief" and "particular regard should be given to the public interest").

Second, the scientific journal article entitled "Applying an ecosystem approach to brucellosis control: can an old conflict between wildlife and agriculture be successfully managed?" is evidence of an ongoing debate in the scientific community regarding the efficacy of WGFD's elk test-and-slaughter program.  Exhibit 3 to GYC Reply.  Because elk test-and-slaughter may exterminate the very animals that have "cleared the infection and are most likely to be resistant" to brucellosis, the program may have the perverse effect of perpetuating rather than eradicating the disease among feedground elk populations. Id. at 323.  This uncertainty weighs in favor of halting the program pending completion of NEPA analysis that considers not only the impacts of test-and-

slaughter but also alternative disease control measures that would be less harmful to elk and more effective in controlling brucellosis.

## II.   THIS COURT CAN LOOK OUTSIDE THE RECORD TO FASHION INJUNCTIVE RELIEF

In APA cases, courts regularly look outside the administrative record in order to fashion an appropriate remedy.  See Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (explaining that "courts have developed a number of exceptions countenancing use of extra-record evidence" including "in cases where relief is at issue"); Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000) (explaining that "if extra-record evidence shows that an agency has rectified a NEPA violation after the onset of legal proceedings, that evidence is relevant to the question of whether relief should be granted" and may be considered accordingly); Warm Springs Dam Task Force v. Gribble, 621 F.2d 1017, 1026 (9th Cir. 1980) (same); Sierra Club v. U.S. Army Corps of Eng'rs, 399 F. Supp. 2d 1335, 1336 n.2 (M.D. Fla. 2005) (noting that "[b]ecause this case is before the Court on motions for preliminary injunction (where, for example, proof of irreparable harm is an issue separate from the merits), the parties are not confined to arguing from the administrative record for all purposes ….").

5

Nevertheless, without citing any supporting Tenth Circuit authority, federal respondents assert that "[t]here is no exception in the Tenth Circuit for allowing extra-record evidence where relief is at issue." Strike Mot. at 3-4. This is wrong. Federal respondents themselves rely on the well-settled proposition that courts may look outside the record for purposes of fashioning injunctive relief. Thus, in their response brief, they argue that "prior to issuing an injunction [against further test-and-slaughter of elk], the Court should hold an evidentiary hearing to afford the parties an opportunity to present evidence as to the potential harms of granting an injunction." Federal Respondents' Response Brief ("Fed. Br.") at 48 (emphasis added) (citing Amoco, 480 U.S. at 542). Federal respondents thus argue that this Court should consider extra-record evidence that would weigh against granting injunctive relief, and at the same time, argue that this Court cannot consider extra-record evidence that weighs in favor of injunctive relief. Federal respondents cannot have it both ways. As the Supreme Court has made clear, courts must consider the balance of harms to all parties as well as the public interest in

determining what equitable relief is appropriate.  See Amoco, 480 U.S. at 542.[1]

## III.    THIS COURT MAY TAKE JUDICIAL NOTICE OF GYC'S PROFFERED EXHIBITS

Finally, this Court may take judicial notice of both exhibits submitted with

GYC's reply brief.  The Federal Rules of Evidence provide that "[j]udicial notice

may be taken at any stage of the proceeding" of facts that are "(1) generally known

within the territorial jurisdiction of the trial court or (2) capable of accurate and

ready determination by resort to sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b), (f).  "A court may take judicial notice, whether

requested or not," and "[a] court shall take judicial notice if requested by a party

---

[1] Consideration of extra-record materials is also proper in this case because "the procedural validity of the [respondent agencies'] action[s]" under NEPA "remains in serious question. Particularly in … [this] context, it may sometimes be appropriate to resort to extra-record information to enable judicial review to become effective." Esch v. Yeutter, 876 F.2d at 991 (emphasis added).  Where, as here, GYC challenges not the substance of any NEPA analysis and subsequent decision made by the agencies, but rather the failure to undertake NEPA analysis in the first instance, evidence demonstrating the need for such analysis is properly before this Court.  See id. (explaining that "the familiar rule that judicial review of agency action is normally to be confined to the administrative record … exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny" but that an exception to the rule applies "in cases where agencies are sued for a failure to take action"); see also Friends of the Clearwater v. Dombeck, 222 F.3d at 560 (considering extra-record evidence to dispose of plaintiffs' claims regarding the failure to undertake supplemental NEPA analysis).

and supplied with the necessary information."  Id. 201(c),(d); see also York v.

American Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996) (explaining that the

Rule "replaces the evidentiary procedure that would otherwise be necessary to

establish adjudicative facts that are generally known or capable of accurate and

ready determination by resort to reliable sources") (internal alterations and

quotations omitted).

Here, the discovery of CWD in elk near the Shirley Creek Mountains is a

well-known fact in Wyoming and may be readily confirmed by WGFD officials,

including the supervisor of the Department's veterinary services branch, Terry

Kreeger, who is quoted in the Jackson Hole News & Guide article.  See Ex. 2; St.

Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp., 605 F.2d 1169, 1172

(10th Cir. 1979) (recognizing that "[t]he scope and reach of the doctrine of judicial

notice has been enlarged over the years until today it includes those matters that

are verifiable with certainty").  Similarly, there is no dispute that the scientific

journal Frontiers in Ecology and the Environment recently published the proffered

peer-reviewed paper questioning the efficacy of test-and-slaughter as a brucellosis

control measure. See Ex. 3; see also American Min. Congress v. Thomas, 772 F.2d

617, 627 (10th Cir. 1985) (recognizing propriety of "references to … extra-record

8

items" that were "substantially akin to the practice of citation to scientific treatises in ordinary civil cases"). Thus, this is not a case like <u>Davis v. Mineta</u>, 302 F.3d 1104, 1123 n.11 (10th Cir. 2002), on which the government relies, where the district court was asked to take judicial notice of information that was the "subject of a considerable amount of dispute between the parties." <u>Id.</u>

Nor is this a case like <u>American Lands Alliance v. BLM</u>, No. 04-CV-19-J (D. Wyo. Aug. 22, 2006) (order denying motion to admit extra-record evidence), also cited by the government, where extra-record evidence was submitted in an effort to persuade the Court to second-guess substantive agency conclusions that Petitioners were challenging. To be clear, GYC does not offer either of the challenged exhibits to demonstrate that the Forest Service and BLM have taken action that is arbitrary. Rather, GYC submits both exhibits to show that a court order is warranted to compel compliance with NEPA procedures. In short, GYC asks this Court to take note of recent developments that make it even more important for the Forest Service and BLM to begin the process of undertaking long overdue environmental analysis.

Thus, the government wrongly argues that "Petitioners are offering the exhibits to prove the truth of the matters asserted therein." Strike Mot. at 5. GYC

9

offers the Jackson Hole News & Guide article solely for purposes of alerting this Court that WGFD has made an announcement regarding the detection of CWD in elk in the Shirley Mountains area.  Further, GYC submits the journal article regarding brucellosis control solely for the purposes of alerting this Court to ongoing controversy over the efficacy of WGFD's test-and-slaughter program. Both WGFD's announcement regarding positive CWD test results and the existence of a debate in the scientific community are facts that are entitled to judicial notice.  See Fed. R. Evid. 201(b).

Finally, contrary to the government's arguments, see Strike Mot. at 4, record review procedures do not preclude courts from taking judicial notice of commonly known or verifiable facts.  "Every case involves the use of hundreds or thousands of non-evidence facts.  Administrative cases and the review of administrative decisions are no exception to this universal truth. An agency or an appeals court could not function if it had to depend on proof in the record of facts capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Singh v. Ashcroft, 393 F.3d 903, 906 (9th Cir. 2004) (citing Fed. R. Evid. 201) (internal quotations and citations omitted).  Thus, "it is nonsense to suppose that [courts] are so cabined and confined that [they] cannot

10

exercise the ordinary power of any court to take notice of facts that are beyond

dispute." Id. at 905.  Here, in reviewing GYC's request for relief, it would defy

common sense to ignore CWD's steady approach toward federally authorized elk

feedgrounds and the current scientific debate about alternatives to test-and-

slaughter as a means of brucellosis control.

## CONCLUSION

For all of the foregoing reasons, Petitioners GYC et al. request that this

Court deny Federal Respondents' motion to strike and take judicial notice of the

factual information documented in the two exhibits submitted with their reply

brief.

Respectfully submitted this 2nd day of November, 2006,

<u>/s/ Abigail M. Dillen</u>
Timothy J. Preso
Abigail M. Dillen
Earthjustice
209 South Willson Avenue
Bozeman, MT  59715
(406) 586-9699
Facsimile: (406) 586-9695

Thomas F. Darin
Jackson Hole Conservation Alliance
P.O. Box 2728
Jackson, WY  83001
(307) 733-9417
Facsimile:  (307) 733-9008